United States District Court For The District Of Connecticut
Pro Se Prisoner Civil Rights
Amended Complaint

Case No. 3:17-CV-01447-VLB

**Plaintiff:** Hon. Ray Victor Boyd

VS.

**Defendants:** Scott Semple, Commissioner
Peter Murphy, Warden
Hall, Captain
Black, Captain
Guadurama, Deputy Warden
Rachel Lightner, Medical Supervisor
Richard Furey, HSAR
Jason Ward, Maintenance Supervisor
Joseph Breton, Dr.
Sharron LaPlante, Dr.
Jane Doe, Phlebotomist
Joan Bonafilia,
Jane Doe, Nurse
Chang Yueming, Dr.
Pillai, Dr.
Kevin Roy, Plant Engineer
Edward Maldonado, Warden
Okonkwo, Medical Staff/Nurse
Dr. Naqvi, Doctor

SCANNED at Cheshire CT and Emailed 4/12/18 by [initials] 83 pages

A. Jurisdiction

This is a civil rights action being filed by Ray Victor Boyd a prisoner at Cheshire Correctional Institute. This complaint is being brought pursuant to 42 U.S.C. 1983/1985 as they apply to violations of the Eight Amendment deliberate indifference, as well as denial of medical care. The plaintiff has filed numerous internal grievances concerning his on going medical issue.

B. Plaintiff
Ray Victor Boyd
#193919
Cheshire C.I.

C. Defendant(s)
#1. Scott Semple
   Commissioner
   Ct. D.O.C. (D.O.C.)
#2. Peter Murphy
   Warden
   Macdougall C.I. (MWCI)
#3. Hall,
   Captain
   Macdougall C.I. (MWCI)
#4. Black,
   Captain
   Macdougall C.I. (MWCI)
#5. Jesus Guaduramma
   Deputy Warden
   Macdougall C.I. (MWCI)
#6. Rachel Lightner
   Medical Supervisor
   Macdougall C.I. (MWCI)
#7. Richard Furey
   Health Services Adm. 2
   Osborn C.I. (O.C.I.)

#8. Jason Ward
   Maintenance Supervisor
   Osborn C.I. (O.C.I.)

#9. Joseph Breton
   Doctor
   Osborn C.I. (O.C.I.)

#10. Sharron LaPlante
   Doctor
   Osborn C.I. (O.C.I.)

#11. Jane Doe
   Phlebotomist
   Osborn C.I. (O.C.I.)

#12. John Bonafilia
   Nurse or LPN
   MacDougal C.I. (MWCI)

#13. Jane Doe
   Nurse or LPN
   MacDougall C.I. (MWCI)

#14. Yueming Chang
   Doctor
   UConn Healt Center

#15. Pillai, Omprakash
   Doctor
   MacDougall C.I. (MWCI)

#16. Kevin Roy
   Plant Engineer
   Osborn C.I. (O.C.I.)

#17. Edward Maldonado
   Warden
   Osborn C.I. (O.C.I.

#18. Okonkwo
   Medical Staff/Nurse
   MacDougall C.I. (MWCI)

#19. DR. NAQVI
PHYSICIAN
MacDougall C.I. (MWCI)

#19. DR. NAQVI
PHYSICIAN

## PARTIES

1. The plaintiff Ray Victor Boyd was incarcerated at the MacDougall Corr. Inst. when this action first transpired. He is now incarcerated at Cheshire C.I. His injuries have continually persisted up until the present time.

## DEFENDANTS:

2. Scott Semple is the Commissioner of Corrections and has a duty / his duties include but are not limited to providing a safe and secure environment for staff and prisoners. Semple is sued in his individual and official capacity.

3. Peter Murphy during the relevant times mentioned herein was the Warden of MacDougall C.I. His duties included but not limited to taking steps to assure the safety of the plaintiff & other prisoners within his care and custody, and to delegate staff to oversee the safety of the food and water supply within the facility. Murphy is sued in his individual and official capacity.

4. Kevin Roy is a Facilities Plant Engineer and an employee of the State of CT. employed at Osborn C.I. At all times relevant and up until present his duties include but are not limited to assuring that the water supply is safe for drinking. Trained in Occupational Safety and Health Administration standards and has a duty to assure that the plaintiff is not exposed to fugitive chemicals and toxic substances. He is sued in his individual and official capacity.

5. Jason Ward is a Maintenance Supervisor and an employee of the State of CT. employed at Osborn C.I. At all times relevant and up until present his duties include but are not limited to assuring that the water supply is safe for drinking. Trained in Occupational Safety and Health Administration standards and has a duty to assure the plaintiff is not exposed to fugitive chemicals and toxic substances. He is sued in his individual and official capacity.

6. Phlebotomist Jane Doe, is a certified specialist contracted to take blood from prisoners at O.C.I. She is sued in her individual and official capacity.

#7. Dr. Pillai Omprakash is an employee of the UConn Health Center contracted with the Department of Correction to provide medical care to the Plaintiff. He is sued in his individual and official capacity.

#8. Richard Furey is an employee of the UConn Health Center contracted with the Department of Correction to assure/provide medical care to the Plaintiff. He is sued in his individual and official capacity.

#9. Dr. Joseph Breton is an employee of the UConn Health Center and a provider of medical care to the Plaintiff as contracted with the Department of Correction. He is sued in his individual and official capacity.

#10. Sharron LaPlante is an employee of the UConn Health Center contracted with the Department of Correction to provide medical care to the Plaintiff. She is sued in her individual and official capacity.

#11. Joan Bonafilia is an employee of the UConn Health Center contracted by DOC. Said nurse has a duty to aid in facilitating treatment ordered by the doctor, as well as following all treatment dictates placed in inmates file by the doctor. She is sued in her individual and official capacity.

#12. Jane Doe (Nurse or LPN) is an employee of the UConn Health Center contracted by DOC. Said Nurse/LPN has a duty to aid in facilitating treatment ordered by the doctor, as well as following all treatment dictates placed in inmates file by the doctor. She is sued in her individual and official capacity.

#13. Dr. Yueming Chang is an employee of the UConn Health Center and a provider of medical care to the Plaintiff as contracted with the Department of Correction. She is sued in her individual and official capacity.

#14. Edward Maldonado during the relevant times mentioned herein was the Warden of MWCI. His duties included but not limited to taking steps to assure the safety of the Plaintiff and other prisoners within his care and custody and to delegate staff to oversee the safety of the food and water supply within the facility. Maldonado, is sued in his individual and official capacity.

#15. Jesus Guadarrama during the relevant times mentioned herein was the Deputy Warden of MWCI. His duties included but not limited to taking steps to assure the safety of the plaintiff and other prisoners within his care and custody. He is sued in his individual and official capacity.

#16. Hall (Captain) acting as a Unit Manager is and or was in charge of safety and security and had a duty to assure that plaintiff at all times mentioned herein remained in good health. He is sued in her individual and official capacity.

#17. Black (Captain) acting as a Shift Commander is and or was in charge of safety and security and had a duty to assure that plaintiff as all times mentioned herein remained in good health. He is sued in his individual and official capacity.

#18. Rachel Lightner is an employee of the UConn Health Center contracted with the DOC to assure/provide medical care to the plaintiff. She is sued in her individual and official capacity.

All

#19. Dr. Naqvi, is an employee of the UConn Health Center contracted with the Ct. Dept. of Correction to provide medical care to the plaintiff. He is sued in his individual and official capacity.

#20. Okonkwo, is an employee of the UConn Health Center contracted with the Ct. D.O.C. to provide medical care to the plaintiff. She is being sued in her individual and official capacity.

All of the defendants have at one time or the other acted in concert and or continue to conspire to provide plaintiff with contaminated water and inadequate medical care. — In violation of Agency Regulation 19-13-B102(e)(7), 19-13-B102(e)(11) and 19-13-B102(H) of the Regulations of Connecticut State Agencies.

## Claims / Statement of Facts

1. The Plaintiff Ray Victor Boyd is a resident of the United States who is currently under the care and custody of the State of Connecticut DOC. While in the care and custody of the DOC the Plaintiff contracted H. pylori and Immune Thrombocytopenia (I.T.P.)

2. The St. of CT. DOC acting in concert with the foregoing defendants were deliberately indifferent and did not take reasonable steps to protect the Plaintiff from foreseeable injury and exposure to cancer causing agents and serious harm which resulted, beginning on or about August 13, 2012 up until present.

   (The Plaintiff asserts that all medical providers are employed by UConn Medical Health Center and under contract with DOC and responsible for the care/treatment of Plaintiff from August 2012 to present as Plaintiff bloodwork is still being monitored by UConn Health Center for ongoing issues and furthermore the Plaintiff now has to carry on his person an emergency medical card to get treatment when bleeding, purpura or petechia accures.)

3. The Plaintiff has been under the care and custody of DOC for the past twenty-five years to date. During this time the Defendants, in the above captioned matter have not taken reasonable steps while the Plaintiff was within their jurisdiction to provide the Plaintiff with safe water and food as well as proper medical attention needed to prevent injury and or risk of harm.

4. On the 12th day of August 2012, the Plaintiff while incarcerated at MWCI noticed several small red marks on traveling up his arm. The next day August 13, 2012, the Plaintiff noticed the red marks became brighter and were spreading in number on his arm. Upon further inspection he discovered the red marks were not only on his arm but had spread over his entire body.

5. The Plaintiff was later diagnosed with "Purpura" and "Petechia" which is associated with Immune Thrombocytopenia (I.T.P.) and H-pylori.

6. In August of 2012, the DOC/UCONN Medical staff sent Plaintiff to UCONN Health Center where Plaintiff was diagnosed with I.T.P. and H-pylori.

7. Plaintiff was admitted to UCONN Medical Center (UCONN) on August 13, 2012 and discharged three days later with instructions to have bloodwork done four times over the next two weeks, because his illness can cause his blood to change which can endanger his life.

8. Upon the Plaintiff's return to M.W.C.I. Dr. Naqvi, failed to order the bloodwork as ordered by the physician who treated Plaintiff at UCONN and did not comply for over twenty days.

9. Plaintiff became weak and lethargic and was returned to UCONN on Sept. 7, 2012.

10. While Plaintiff was at UCONN being treated for I.T.P. & H-pylori, Plaintiff was placed on Neurotin to decrease bleeding risk and decrease potential damage to kidney as well as better control neuropathic pain.

11. Upon return to MWCI, Dr. Naqvi discontinued the prescribed medicine without explanation.

12. Although Plaintiff was in pain and the medication to stop pain was prescribed by a specialist at UCONN, Dr. Naqvi, refused to continue the medication and explain why he discontinued it.

13. On August 9th, 2013, Plaintiff again began feeling the symptoms of I.T.P. and H-pylori and informed the DOC Medical Dept. of this life threatening condition at emergency sick call.

14. Although Dr. Laplante ordered Plaintiff bloodwork be taken on August 12, 2013, the bloodwork was not taken until August 13, 2013; Plaintiff had to live with critically low blood platelet counts for four days, and Plaintiff had to be

rushed to UConn for life threating condition.

15. While at Osborn C.I., on September 24, 2015, Plaintiff informed Dr. Chang, that he wasn't feeling well & was feeling symptoms of H.pylori and Dr. Chang ordered testing to be done on this day.

16. Testing was not taken for almost two months on November 12, 2015. Dr. Chang and Medical Staff and Dr. Breton and HSA Rich Furey, knew of my condition with I.T.P. and H.pylori and knew I had to be rushed to the hospital two years prior when my blood testing was delayed by a mere day, and did not care.

17. Even after being tested and found positive for H.pylori on November 16, 2015, Dr. Breton let me live with the bacterial infection for another three weeks until finally treating me on December 12, 2015 and over medicating me in January of 2016.

18. Plaintiff had to life with H.pylori from Sept. 2015 until Dec. 12, 2015, which the medical staff were deliberate indifferent in his care.

19. On July 17, 2017, I wrote to the Health Services Administrator (H.S.A.) Richard Furey, to express my concerns with regards to my treatment as well as the water conditions at OCI. Mr. Furey, is aware of my condition with I.T.P. and H.pylori and knew I had to be rushed to the hospital two and three years prior and is assisting in the delay of my treatment/accommodations with a bacterial infection that has the potential of developing into cancer. H.S.A. Furey, does not care.

20. On August 28, 2012, Bonafiliak, falsified documents in my medical file stating that Plaintiff was at the gym and did not report to sick call. On this date, Plaintiff was housed in Q-pod at MWCI a Secure Housing Unit that does not send its prisoners to the gym. Bonafiliak, conspire to avoid addressing the Plaintiff medical condition.

21. On Sept. 21, 2012, Guaduramma authored an incident report that was submitted approximately 38 days after Plaintiff was sent to Hospital UConn - The report stated "...the cause of the bleeding gums was an allergic reaction to medication." Plaintiff is not allergic to any known or unknown medications. Therefore, Guaduramma, in concert with medical staff did write info concerning the Plaintiffs confidential medical records in a report in violation of Conn. Gen. Stat. §53a-180.

(HIPPA), and C.G.S. 52-146. Not only did defendant falsify an incident report, but the defendant lied about plaintiffs condition by reporting that plaintiff was hospitalized for an allergic reaction and not I.T.D. and H.pylori.

22. On August 14, 2012 Captain Hall, authored an incident report after interviewing unknown medical staff and in the report stated the plaintiff had failed to mention some of his medical allergies that should have been disclosed upon entering the facility. The plaintiff has never had any medical allergies and was not admitted to UConn for any such thing. Not only did defendant falsify an incident report, but the defendant lied about plaintiffs condition by reporting that plaintiff was hospitalized for an allergic reaction and not I.T.D. and H.pylori.

23. Murphy, Guaduramma and Black did attempt to cover up the plaintiffs true cause of illness by falsifying incident report #2.

24. The plaintiff was discharged from UConn on August 16, 2012 with discharge instructions to have bloodwork (CBC) done on the 1st, 5th, 7th and 14th day upon return to MWCI. The purpose of the subsequent CBC was to monitor the plaintiffs blood platelet counts. The plaintiffs condition is of such a nature that his platelet were to become low a sneeze can bust a blood vessel in his head and he can bleed to death. Additionally any small cut to plaintiff can be fatal, as he suffers from critically low platelet counts.

25. The blood monitoring was ordered by Dr. Wasser. Dr. Naqvi, was deliberately indifferent in changing this order without explaining. The plaintiff could have relapsed to critically low platelet levels and caused the death of plaintiff. The plaintiff went for over twenty days without having CBC taken.

26. During this time the plaintiff was awaiting to have CBC work done, the plaintiff began to feel weak and lethargic as a result of the deliberate indifference of Dr. Naqvi concerning the processing of CBC. The plaintiff had to return to UConn on 9/7/12, during this time the plaintiff was in fear for his life.

27. On Sept. 7, 2012 when Plaintiff was returned to UCONN it was discovered by Dr. Wasser that CBC bloodwork was not taken and a complete new series of CBC was ordered by Dr. Wasser — Test were to be done on Thursdays 9/13/12; 9/20/12 and 9/27/12; with all results reported to Dr. Wasser on Fridays 9/14/12; 9/21/12, and 9/28/12 due to the seriousness of the Plaintiffs conditions.

28. Dr. Naqvi, without consulting with Plaintiff discontinued Plaintiffs prescribed Neurontin use to reduce bleeding and damage to kidneys. The foregoing actions are incorporated herein by reference and was done to save money on health care.

29. The actions of Dr. Naqvi, in refusing to do a work up of the Plaintiffs CBC on the 17th, 21st, 23rd and 30th of August, 2012 and the deliberate act of discontinuing the Plaintiffs "Neurontin" was done in a deliberate manner in order to save the DOC money in treatment associated costs with the Plaintiffs H.pylori and E.T.D. The defendants routinely use such tactics as a money saving method within the DOC.

30. On 8/23/12 the Plaintiff filed a medical remedy for the actions of Dr. Naqvi. The remedy was never returned to Plaintiff. From Aug. 20, 2012 to Sept. 9, 2012 the Plaintiff went without adequate medicine for his sciatica. During this time Plaintiff not only in fear for his life but felt ill and suffered pain.

31. The DOC allowed MWCI and OCI to operate a water supply unit that was not adequately monitored for fugitive bacterial agents. The actions of the defendants did contribute to the Plaintiff developing H.pylori which lives within the Plaintiff's body to date and has become the continuing source of illness, pains and stress to the Plaintiff.

32. As a result of the actions of the DOC in failing to properly monitor the water, the Plaintiff became ill with H.pylori.

33. The actions of the medical department and phlebotomist, were not only deliberately indifferent but were reckless and amounted to malpractice — (Plaintiff requested name of phlebotomist from HSA Furey, who said he did not know "see request Plaintiff filed")

34. While at the Osborn C.I. the Plaintiff H.pylori continued to be a medical issue. The Plaintiff was incarcerated at O.C.I. back in the 1990's when it was Somers C.I.

35. The deliberate indifference in assuring the safety of drinking water at OCI as early as 1990 to present OCI has had water supplied to the inmate population from a bedrock in the Somers, CT. Area. The water has been and continues to pose a health risk to the Plaintiff who has contracted H.pylori. Among the cancer causing chemicals in the water are tetrachloroethylene, a solvent used in dry cleaning in the 90's at OCI. This solvent was found in ground water around the OCI as early as 1993. Said solvent contaminated 35 wells and turned the Rye Hill Circle area of town into a Super Fund site in 1993.

36. In 2013 and 2015 defendant Kevin Roy allowed elevated levels of chlorine to persist and pose a danger to plaintiff. The defendant was not licensed to test or monitor said water. This knowledge was available to Maldonado who upon knowing did not act to secure safe drinking water to plaintiff.

37. On July 17, 2017 I wrote to HSA Furey about receiving the H.pylori breath test as instructed by Dr at UConn. Plaintiff appointment kept getting rescheduled, HSA and Dr. Breton are well aware of Plaintiffs condition and should not have made me wait over a month for medical attention.

38. On 8-12-17, the plaintiff filed a request for reasonable accommodations to purchase a water filtration bottle, HSA denied my request having himself just learned that the drain flies at OCI were a carrier of H.pylori.

39. On 8-11-17, the plaintiff wrote HSA Furey, about the poor water system at OCI and the drain flies that contribute to H.pylori. Defendant HSA Furey responded with a false response.

40. On 8-19-17, the plaintiff ask HSA Furey to provide me with the name of the maintainance supervisor who he falsely stated treated the entire water system for drain flies. HSA in his response gave the name of Jason Ward maintenance supervisor.

41. After writing repeated request to Jason Ward about the water treatment and getting no response, on 10-28-17 the Plaintiff filed an administrative remedy wherein Jason Ward stated that he never spoke to anyone regarding drain flies and knows nothing of any treatment of drain flies to the water system at OCI.

42. HSA Furey, falsified his response to Plaintiff so that he would not have to provide the Plaintiff with medical care and/or clean drinking water. HSA Furey, acted deliberately indifferent.

43. All of the foregoing Defendants have been and continue to be deliberately indifferent to the Plaintiff and all have been placed on notice of violations of the water supply. Said Defendants knowing of said violations chose to protect the residents of the town of Somers by providing them with bottled water, and filtered water to protect them from contaminates.

44. Meanwhile the Defendants knowingly place the Plaintiff at risk of death by continuing to supply the Plaintiff with unsafe drinking water. The Defendants have no regard for the Plaintiffs life as he is merely a prisoner.

45. Even in light of these developments the above mentioned Defendants refuse to even make an attempt to supply the Plaintiff with bottled water, filtered water, or to even sell the Plaintiff or other prisoners a water filtration device such as Brita or Lifesaver.

46. The following paragraph 46 is hereby incorporated herein by reference.
The Plaintiff Ray V. Boyd as a result of not having his bloodwork done by OCI Medical Unit as ordered by Dr. LaPlante, nearly died as his blood platelet count fell to critically low levels. Plaintiff came within hours of death due to the actions of the named Defendants. The Plaintiff continues to live in fear for his life.

47. The following paragraph 47 is hereby incorporated herein by reference.
The Plaintiff as a result of the actions of the Defendants has contracted I.T.P. and H. pylori a bacterial infection that now lives in the Plaintiffs body. The Plaintiff has a high risk of cancer and other medical illness. Additionally, the Plaintiff suffers from

Dizzy Spells, Abdomen Pains, Giddiness, loss of Memory and Sharp Pains below his Rib Cage.

Dizzy Spells, Abdomen Pains, Giddiness, loss of Memory and Sharp Pains below his Rib Cage.

# Request For Relief

WHEREFORE, Plaintiff request that this Honorable Court Grant the following Relief:

A. A judgement stating the water supply from the bedrock in Somers, presently being supplied to the OCI poses a risk to the plaintiff who lives with H.pylori in his body.

B. Declare that Dr. Naqvi, Dr. LaPlante and Dr. Chang, violated the plaintiffs Eighth Amendment rights to adequate medical care in failing to order the plaintiffs CBC bloodwork and in failing to assure that plaintiffs condition was properly monitored and that said action constituted deliberate indifference and medical malpractice.

C. Declare that Dr Breton and HSA Furey, violated the plaintiffs Eighth Amendment rights to adequate medical care in failing to order the plaintiffs bloodwork and H.pylori testing and treatment and in failing to assuring that plaintiffs condition was properly monitored and that said action constituted deliberate indifference and medical malpractice.

D. Declare that both phlebotomist (on 8-13-13) and (9-24-15) violated the plaintiffs Eighth Amendment rights to adequate medical care in failing to draw plaintiffs CBC bloodwork and H.pylori testing and that said action constituted deliberate indifference and medical malpractice

E. Declare the defendants Maldonado and Semple, provide plaintiff with bottled water or a filter to sift contaminates out of water supply.

F. Declare that the actions of defendants Murphy, Guadaramma, Black and Hall, in fabricating evidence in an attempt to deny plaintiff access to the court violated the plaintiffs state rights under Article 1 section 10 of Ct. Constitution.

G. The failure of defendants to act on their knowledge of substantial risk of serious harm to plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safety.

H. The failure of Defendant Commissioners Semple to act on his knowledge of substantial risk of serious harm to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safety.

I. The failure of Defendants: Kevin Roy and Jason Ward to act on the knowledge of substantial risk of serious harm to Plaintiff violated his Eighth Amendment right to be free from deliberate indifference to his safety.

J. Issue an injunction ordering the Defendants Semple, Maldonado HSA Furey, to make funds available for water filters and bottled water for the Plaintiff to utilize while in the custody of the Department of Correction.

K. Award Compensatory damages for Plaintiffs physical and emotional injuries in the amount of $132,000.00 dollars per Defendant.

L. Award Punitive damages against each Defendant in the amount of $100,000.00 dollars per Defendant.

M. Grant such other relief as it may appear Plaintiff is entitled to.

Respectfully Submitted,
By: Howard V. Boyd
Howard V. Boyd
#193919 - C.C.I.
900 Highland Ave.
Cheshire, CT. 06410

3:17-CV-01447-VLB

F.  DO YOU WISH TO HAVE A JURY TRIAL?   YES __✓__ NO____

G.  DECLARATION UNDER PENALTY OF PERJURY

Warning: You must sign this or your amended complaint will not be filed.

By signing this amended complaint, I certify under penalty of perjury that the information contained in this amended complaint is true and accurate to the best of my knowledge.  I understand that if I lie in this amended complaint, I may be prosecuted for perjury, and punished with as much as five (5) years in prison and/or a fine of $250,000.  See 18 U.S.C. Sections 1621, 3571.

Signature: _Hon. Ray V. Boyd_

Signed at _CHesHire Correction Institute_ on _____
              (Location)                                                      (Date)

If there are additional plaintiffs, attach another page with the name and signature of each plaintiff on it.  **The amended complaint cannot be filed without a signature from each plaintiff.**

H.  FINAL INSTRUCTIONS

WARNING: Your amended complaint will not be filed unless you complete each of these steps:

    1.    Answer all questions on the amended complaint form.

    2.    Sign the Declaration under Penalty of Perjury on p. 8

Remember, the Clerk cannot file your amended complaint unless you take all of the steps above.

Do you wish to have a jury trial? Yes ✓ No ___

Declaration under penalty of perjury
Signature: Hons Rg in Boge
Signed at: CCI 900 Highland Ave. Cheshire, CT 06410
Date: 4-11-17